UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 24-60215-CIV-MARTINEZ

REINALDO DIAZ,

    Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## ORDER DISMISSING 28 U.S.C. § 2254 PETITION AS TIME BARRED

**THIS CAUSE** came before this Court on Petitioner Reinaldo Diaz's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (the "Petition"), (ECF No. 1.) Petitioner, a state prisoner, challenges his convictions and sentences in Case No. 03-10586-CF-10A in the Seventeenth Judicial Circuit in and for Broward County, Florida. This Court has considered the Petition, the State's Response to the Order to Show Cause, (ECF No. 18), along with the supporting appendix and state court transcripts, (ECF Nos. 19, 20), and Petitioner's Reply, (ECF No. 21.) After careful consideration, the Petition is **DISMISSED** as time barred.[1]

### I. PROCEDURAL HISTORY

#### A. *State Proceedings*

In 2003, Petitioner and his co-defendant, Israel Lake, were charged with one count of burglary with an assault or battery while armed (Count 1); two counts of armed robbery (Counts 2 and 3); three counts of armed kidnaping (Counts 4–6); and one count of falsely impersonating

---

[1] The dismissal of a section 2254 habeas petition as time-bared is with prejudice and is a merits adjudication for purposes of successiveness. *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1353 (11th Cir. 2007).

an officer during the commission of a felony (Count 7). (Resp't Ex. 2, ECF No. 19-1 at 12–16.) Petitioner's first trial ended with the trial court striking the jury panel during voir dire. (Resp't Exs. 10, 11, *id*. at 55–59.) Petitioner's second trial ended in a mistrial. (Resp't Ex. 13, 16, *id*. at 62, 70.) Petitioner's third trial ended in a conviction on counts 1–5. (Resp't Ex. 20, *id*. at 80–86.) Petitioner was sentenced to fifty years in state prison. (Resp't Ex. 27, *id*. at 156–71.)

During Petitioner's second and third trials, defense counsel sought to introduce a photograph of a former Hialeah police officer who was a suspect in a series of similar robberies committed with Petitioner's co-defendant in Miami-Dade County. (Trial Tr., ECF No. 20-3 at 222:13–227:6.) Counsel argued that this officer looked like Petitioner, and he hoped that he would "get lucky" and have the victim identify the officer as the actual perpetrator. (*Id*. at 223:5–224:7.) The trial court denied counsel's request to admit the photograph. (*Id*. at 227:2.)

Petitioner filed a direct appeal, and the Fourth District Court of Appeal ("Fourth DCA") affirmed Petitioner's convictions and sentences in a written opinion on August 1, 2007. *Diaz v. State*, 961 So. 2d 381 (Fla. 4th DCA 2007).

On April 21, 2009, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. (Resp't Ex. 39, ECF No. 19-2 at 2–22.) It was denied by the trial court on May 20, 2011, following an evidentiary hearing. (Resp't Ex. 46, *id*. at 50–55.) Petitioner appealed, and the Fourth DCA affirmed, *per curiam*. *Diaz v. State*, 100 So. 3d 706 (Fla. 4th DCA 2012). Between 2013 and 2020, Petitioner filed several other *pro se* motions in state court attacking his convictions and sentences, which were either denied or have not been ruled upon.

**B. *Federal Habeas Proceeding***

On January 29, 2024, Petitioner filed the instant *pro se* Petition under 28 U.S.C. § 2254 in the Middle District of Florida. (ECF No. 1.) The Petition was transferred to this Court. (ECF No. 3.) The Petition raises two claims. First, Petitioner alleges that the prosecution withheld evidence

of his innocence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that police had developed a different suspect, a former Hialeah police officer who looked like Petitioner. (ECF No. 1 at 5–8.) Second, Petitioner alleges that the jury returned a legally inconsistent verdict by convicting him of armed robbery, armed burglary, and armed kidnapping without finding that he actually possessed a firearm. (*Id.* at 10–12.) The State responded, arguing that Petitioner's claims are untimely, procedurally defaulted, and without merit. (ECF No. 18.) Petitioner filed a Reply. (ECF No. 21.) The matter is ripe for review.

## II.   DISCUSSION – TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for all federal habeas petitions. *See* 28 U.S.C. § 2244(d)(1). Under the AEDPA, the limitations period shall run from the latest of—

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D).

Here, the relevant provision is sub-section (A): Petitioner's one-year limitations period began to run on "the date on which [his] judgment became final by the conclusion of direct review." § 2244(d)(1)(A). Petitioner does not allege that the State created an unconstitutional

impediment to filing the Petition, § 2244(d)(1)(B), his claims do not rely on a newly recognized right by the Supreme Court, § 2244(d)(1)(C), nor are they based on newly discovered facts, § 2244(d)(1)(D).[2]

Here, because the Fourth DCA issued a written opinion affirming Petitioner's convictions and sentences, his judgment became final on **August 31, 2007**—thirty days after the Fourth DCA's affirmance—when the period for seeking discretionary review with the Florida Supreme Court expired. *See* Fla. R. App. P. 9.120(b); *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (holding that "for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires"); *Cook v. Dixon*, No. 21-CV-14108-BB, 2022 WL 20582638, at *2 (S.D. Fla. Mar. 24, 2022) ("In Florida, if the appellate court affirms a conviction in a written or elaborated opinion, a petitioner may seek discretionary relief in the Florida Supreme Court. If discretionary review is not sought, the conviction becomes final when the 30-day period for seeking review in the Florida Supreme Court expires." (citation omitted)). Thus, absent any tolling, Petitioner had until **August 31, 2008**, to file his Petition.

**A. *Statutory Tolling***

The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In other words, the one-year clock continues to tick during any gaps in the state post-conviction review process. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011). Here, the statute of limitations ran untolled for more than one year after Petitioner's judgment became final. Petitioner did not file his first post-conviction application— his Rule 3.850 motion—until April 21, 2009, eighteen months after his judgment became final.

---

[2] As explained in the Court's discussion of "Actual Innocence," *infra*, the evidence Petitioner relies on to support his first ground was known to him at trial.

(Resp't Ex. 39, ECF No. 19-2 at 2–22.) At that point, none of Petitioner's filings could toll the statute of limitations because it had expired. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (a post-conviction motion cannot toll the AEDPA's limitations period after it has expired). Thus, Petitioner is not entitled to statutory tolling.

### B. *Equitable Tolling*

The AEDPA's one-year limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court has established a two-part test for equitable tolling: the petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is, therefore, "an extraordinary remedy limited to rare and exceptional circumstances and typically applied sparingly." *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 477 (11th Cir. 2014) (quotation and citation omitted). The Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008).

Petitioner appears to present arguments for equitable tolling. In explaining why he did not raise his first ground in state court, Petitioner avers that he "is no lawyer . . . struggles with the English language . . . and until now has been wholly reliant on the mis-advise [sic] . . . of court's appointed counsel and [ ] prison law clerks. . . ." (ECF No. 1 at 5.) Petitioner claims that he has now "been befriended by one knowledgeable in such matters of law" who is "willing to guide the Petitioner is his quest for relief. . . ." (*Id.*)

Petitioner's *pro se* status, his lack of legal knowledge or English proficiency, and his reliance on inmate law clerks are not grounds that support equitable tolling. *See Perez v. Florida*,

519 F. App'x 995, 997 (11th Cir. 2013) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling. Furthermore, we have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion"); *Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007)) ("*[P]ro se* litigants, like all others, are deemed to know of the one-year statute of limitations.") Likewise, Petitioner's conclusory allegation about attorney misadvice does not support equitable tolling. *See Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1237 (11th Cir. 2017) ("an attorney's negligence, even gross negligence, or misunderstanding about the law is not by itself a serious instance of attorney misconduct for equitable tolling purposes"). Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

### C. *Actual Innocence*

Lastly, a petitioner may overcome the statute of limitations by showing actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). For a claim of actual innocence to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In assessing such evidence, "the district court is not bound by the rules of admissibility that would govern at trial[,]" and must "consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327–28. Such evidence is "unavailable in the vast majority of cases, [and] claims of actual innocence are rarely successful." *Id.* at 324.

Petitioner raises a claim of actual innocence in support of his first ground. He alleges a *Brady* violation, claiming that the prosecutor withheld evidence of "how police investigators had developed a different suspect"—former Hialeah police officer Omar Diaz—who allegedly committed similar robberies with Petitioner's co-defendant. (ECF No. 1 at 5.) Petitioner's trial counsel ultimately obtained this evidence and sought to admit it in the second and third trials. Counsel informed the trial court that the Miami-Dade Police Department had issued a press release depicting Omar Diaz as a suspect in robberies involving police impersonation. (Trial Tr., ECF No. 20-3 at 222:18–20.) During the second trial, Petitioner's counsel obtained a photograph of Omar Diaz and sought to show it to one of the victims during cross-examination, hoping that he would "get lucky and have [the victim] say, 'This is the person who robbed me.'" (*Id.* at 224:5–7.) Counsel emphasized that Omar Diaz looked like Petitioner, a point which the trial court acknowledged but did not fully endorse. (*Id.* at 226:25–227:2.) Petitioner's counsel argued that this photographic evidence was admissible as "reverse *Williams* rule"[3] evidence because the robbery in this case also involved police impersonation (including the use of a police badge), and the presence of cash in the victims' home "could suggest that a police officer had information that he leaked or [ ] used himself." (*Id.* at 224:3–5.)

The trial court excluded this evidence in both the second and third trials, finding that it lacked a proper foundation because the victim had never been shown the photograph of Omar Diaz. (*Id.* at 14–15.) On direct appeal, Petitioner argued that the trial court erred in excluding this evidence because it was crucial to his defense theory of misidentification. (Resp't Ex. 33, ECF No. 9-1 at 216–222.) The Fourth DCA affirmed, ruling that "[t]here was an insufficient basis to offer

---

[3] *See Williams v. State,* 110 So.2d 654 (Fla. 1959) (holding that evidence of other crimes, wrongs or acts is properly admitted when relevant to prove a material fact in issue). "[A] defendant may introduce similar fact evidence of other crimes or 'reverse *Williams* rule evidence' for exculpatory purposes." *Edwards v. State,* 857 So. 2d 911, 912 (Fla. 3d DCA 2003).

the photograph as reverse *Williams* rule evidence" because "[d]efense counsel did not request to proffer the photograph to the witness outside the presence of the jury." *Diaz*, 961 So. 2d at 382.

In his Petition, Petitioner argues that this photograph (which he attaches to the Petition) demonstrates that "[t]his is a case of mistaken identification" and that the actual perpetrator was Omar Diaz. (ECF No. 1 at 6–7); (ECF No. 1-1 at 69.) Petitioner highlights the fact that he was convicted solely based on eyewitness identification, and that the State lacked physical evidence connecting him to the crime. (ECF No. 1 at 8.) In his Reply, Petitioner further alleges that the police badge found in his co-defendant's car belonged to Omar Diaz, although he provides no evidence to support this claim. (ECF No. 21 at 5.)

Petitioner's evidence does not show that "it is more likely than not that no reasonable juror would have convicted [him]." *Schlup*, 513 U.S. at 329. Petitioner's conviction was supported by the eyewitness identification of two victims, who positively identified Petitioner in both a photo lineup and at trial and were confident in their identification. (Trial Tr., ECF No. 20-3 at 289:19–290:5, 429:2–431:16.) The State also possessed evidence that Petitioner had committed similar robberies in which he impersonated a police officer, and Petitioner's co-defendant told police that he and Petitioner had known each other for twenty-seven years. (Resp't Ex. 8, ECF No. 19-1 at 34–35); (Trial Tr., ECF No. 20-3 at 236:17–18). Although these pieces of evidence were not presented to the jury, they may be considered by this Court in determining whether Petitioner has shown actual innocence. *See Schlup*, 513 at 327 (in evaluating a claim of actual innocence, courts are "not bound by the rules of admissibility that would govern at trial"); *House v. Bell*, 547 U.S. 518, 538 (2006) (holding that the habeas court must consider all the evidence, both "incriminating and exculpatory," whether it was admissible at trial or not).

Crucially, Petitioner has offered no evidence linking Omar Diaz to the crime in this case. The only evidence Petitioner offers in support of his innocence is that Omar Diaz bears some

resemblance to him and was a suspect in other robberies involving his co-defendant. But Petitioner has produced no evidence showing that Omar Diaz was ever charged in those robberies, and Petitioner's counsel merely speculated at trial that he might "get lucky" and have the victim identify Omar Diaz as the robber in this case. (Trial Tr., ECF No. 20-3 at 224:6.) That is insufficient to qualify as "new reliable evidence" supporting an actual innocence claim. *Schlup*, 513 U.S. at 324; *see also Goshay v. Dixon*, No. 22-CV-54, 2022 WL 4001144, at *5 (N.D. Fla. Aug. 17, 2022), *adopted*, 2022 WL 4002898 ("[Petitioner's] speculation falls far short of satisfying *Schlup*'s 'new reliable evidence' standard.").

Furthermore, this Court must consider the significant delay in presenting this evidence. *See McQuiggin*, 569 U.S. at 399 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" of actual innocence). It took Petitioner more than sixteen years to present his actual innocence claim on post-conviction review, despite knowing about this evidence since his trial. *See id.* at 400 (finding that the petitioner's evidence was likely "insufficient to meet *Schlup*'s actual-innocence standard" where the district court found that the evidence was "substantially available to [the petitioner] at trial."). Petitioner alleges that was unable to present this claim until he befriended an inmate law clerk who helped him file the instant Petition. But the credibility of this assertion is belied by the fact that Petitioner filed multiple post-conviction motions and appeals in state court, asserting numerous grounds for relief.

Finally, the fact that this evidence was available at trial, and two different trial judges considered it and declined to admit it, underscores its insufficiency to meet *Schlup*'s high bar. *See Glenn v. Sec'y, Dep't of Corr.*, No. 18-13622-F, 2018 WL 11298687, at *1 (11th Cir. Nov. 20, 2018) (finding that the petitioner's claims were not "based on 'new' evidence, as they both are based on information that was available or presented at trial"); *Blake v. Sec'y, Dep't of Corr.*, No.

18-13739-K, 2019 WL 11805025, at *1 (11th Cir. Mar. 29, 2019) (finding that the petitioner's evidence that "two witnesses at his trial later recanted their testimonies" did not meet the actual innocence standard where "the state court that heard the witnesses' recantations found that they were not credible"). In sum, Petitioner has not demonstrated actual innocence.

### III. EVIDENTIARY HEARING

Petitioner is not entitled to an evidentiary hearing because he has not alleged specific facts that, if true, would entitle him to habeas relief. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, [Petitioner] is not entitled to an evidentiary hearing.").

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 1), is **DISMISSED** as time barred.

2. A certificate of appealability is **DENIED** because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).

3. The Clerk is directed to **CLOSE** this case and mail a copy of this Order to Petitioner at the address of record.

4. Final judgment shall be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31 day of May, 2024.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of record via CM/ECF
Reinaldo Diaz, *pro se*